UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>$17,300.00 IN UNITED STATES CURRENCY,<br><br>Defendant *in Rem*. | No: 1-25-cv- |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, the United States of America, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### *NATURE OF THE ACTION*

1. This is a civil forfeiture action *in rem*, as authorized by 31 U.S.C. § 5317(c)(2), in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to 18 U.S.C. § 981(a)(1)(A), in which the United States of America alleges that $17,300 in United States Currency (the "defendant in rem") is subject to forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(2) because it is property involved in a violation of 31 U.S.C. § 5316 and is property traceable to that violation.

### *DEFENDANT IN REM*

1. The defendant in rem consists of $17,300 in United States currency seized by United States Customs and Border Protection ("CBP") on March 5, 2025, from the person and vehicle of Ian Swan at the Calais, Maine International Port of Entry.

2. The defendant in rem is presently in the custody of CBP in a CBP suspense account.

1

## *JURISDICTION AND VENUE*

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in the District of Maine. Further, venue is proper in this district pursuant to 28 U.S.C. § 1395(a), as referenced in 28 U.S.C. § 1355(b)(1)(B), which permits a civil proceeding for forfeiture to "be prosecuted in the district where it accrues or the defendant is found."

## *FORFEITURE AUTHORITY*

5. Pursuant to 31 U.S.C. § 5316:

> Except as provided in [Section 5316(c)], a person or an agent or bailee of the person shall file a report under [Section 5316(b)] when the person, agent, or bailee, knowingly—
> (1) Transports, is about to transport, or has transported monetary instruments of more than $10,000 at one time—
>   (A) from a place in the United States to or through a place outside the United States; or
>   (B) to a place in the United States from or through a place outside the United States . . . .

31 U.S.C. § 5316(a)(1).[1]

6. "Monetary instruments" include "United States coins and currency . . . ." 31 U.S.C. § 5312(a)(3)(A).

7. Pursuant to 31 U.S.C. § 5322, "[a] person willfully violating [Subchapter II of Title 31, Subtitle IV, Chapter 53—which includes Section 5316]

---

1  Section 5316(c), which is not applicable in this action, provides that "[t]his section or a regulation under this section does not apply to a common carrier of passengers when a passenger possesses a monetary instrument, or to a common carrier of goods if the shipper does not declare the instrument." 31 U.S.C. § 5316(c).

2

or a regulation prescribed or order issued under this subchapter (except section 5315, 5324, or 5336 of this title or a regulation prescribed under section 5315, 5324, or 5336) . . . shall be fined not more than $250,000, or imprisoned for not more than five years, or both." 31 U.S.C. § 5322(a).

8. A report under Section 5316 "shall be filed at the time and place the Secretary of the Treasury prescribes" and shall contain, to the extent prescribed by the Secretary of the Treasury:

> (1) the legal capacity in which the person filing the report is acting.
> (2) the origin, destination, and route of the monetary instruments.
> (3) when the monetary instruments are not legally and beneficially owned by the person transporting the instruments, or if the person transporting the instruments personally is not going to use them, the identity of the person that gave the instruments to the person transporting them, the identity of the person who is to receive them, or both.
> (4) the amount and kind of monetary instruments transported.
> (5) additional information.

31 U.S.C. § 5316(b), (b)(1)-(5).

9. With limited exceptions, *see* 31 C.F.R. 1010.340(c)(1)-(9), (d), pursuant to 31 C.F.R. § 1010.340:

> Each person who physically transports, mails, or ships, or causes to be physically transported, mailed, or shipped, or attempts to physically transport, mail or ship, or attempts to cause to be physically transported, mailed or shipped, currency or other monetary instruments in an aggregate amount exceeding $10,000 at one time from the United States to any place outside the United States, or into the United States from any place outside the United States, shall make a report thereof. A person is deemed to have caused such transportation, mailing or shipping when he aids, abets, counsels, commands, procures, or requests it to be done by a financial institution or any other person.

31 C.F.R. § 1010.340(a).[2]

10.     Such a report required by 31 C.F.R. § 1010.340(a) "shall be filed at the time of entry into the United States or at the time of departure, mailing or shipping from the United States, unless otherwise specified by the Commissioner of Customs and Border Protection." 31 C.F.R. § 1010.306(b)(1).

11.     For currency or other monetary instruments physically accompanying a person entering the United States, such a report "shall be filed with the Customs officer in charge at any port of entry or departure, or as otherwise specified by the Commissioner of Customs and Border Protection[,]" and "shall be filed on forms prescribed by the Secretary [of the Treasury]." 31 C.F.R. § 1010.306(b)(3), (d). "All information called for in such forms shall be furnished." 31 C.F.R. § 1010.306(d).

12.     Pursuant to 31 U.S.C. § 5317, "[a]ny property involved in a violation of [31 U.S.C. § 5316], or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to [18 U.S.C. § 981(a)(1)(A)]." 31 U.S.C. § 5317(c)(2)(A).

### *FACTUAL BASIS FOR FORFEITURE*

13.     On March 5, 2025, Ian Swan ("Swan"), a Canadian resident and citizen, applied for admission to the United States of America at the Calais, Maine International

---

2     Formerly 31 C.F.R. § 103.23(a)-(d). *See* Transfer and Reorganization of Bank Secrecy Act Regulations, 75 Fed. Reg. 65,806-65,879 (Oct. 26, 2010).

Port of Entry ("Calais POE"). Swan was alone in a vehicle bearing a Nova Scotia license plate and presented a Canadian passport bearing his photograph as proof of his Canadian citizenship.

14. CBP Officer Chutko conducted a primary inspection. Swan stated that he was destined to the United States to purchase a boat and that he had $2,000 in cash. When asked about the cost of the boat and how he would pay, Swan disclosed he would pay any balance by wire transfer.

15. Swan was referred to secondary inspection for verification of his story and verification of the amount of money with which he was traveling. CBP Officer Brissette conducted the secondary inspection.

    a. During the secondary inspection, Swan again stated that he had $2,000 in cash.

    b. CBP Officer Brissette asked Swan to accompany him to the vehicle secondary inspection area to show Officer Brissette where the money was in Swan's vehicle.

    c. CBP Officer Brissette then observed that the U.S. Currency that Swan showed him from Swan's vehicle appeared to be more than $2,000.

    d. CBP Officer Brissette asked Swan to demonstrate how much money he possessed. Swan counted the money, which appeared that time to total $6,900 in U.S. Currency.

        i. CBP later recounted that money and determined Swan had in fact possessed $7,000 in U.S. Currency.

16. CBP Officer Brissette and Swan then returned to the Calais POE lobby,

where Officer Brissette presented Swan with a FinCEN Form 105 (Report of International Transportation of Currency or Monetary Instruments) to complete.

    a. As reflected in the redacted partial copy below, Swan completed the FinCEN Form 105, providing his last name/surname, date of birth, and permanent address in Nova Scotia, Canada.

    b. Swan also stated that Canada was his country of citizenship, that his "ADDRESS WHILE IN THE UNITED STATES" was "IN TRANSIT TO NORFOLK," and that he and currency or monetary instruments had departed from Halifax, Nova Scotia, and arrived at Calais, Maine.

    c. As reflected in the redacted partial copy below, in completing the FinCEN Form 105, Swan declared $7,000 in U.S. Currency.

    d. As reflected in the redacted partial copy below, Swan signed the FinCEN Form 105 under the statement: "Under penalties of perjury, I declare that I have examined this report, and to the best of my knowledge and belief it is true, correct and complete."



**DEPARTMENT OF THE TREASURY**
**FINANCIAL CRIMES ENFORCEMENT NETWORK**
**REPORT OF INTERNATIONAL TRANSPORTATION OF CURRENCY OR MONETARY INSTRUMENTS**

FinCEN Form **105** (Formerly Customs Form 4790) (Rev. July 2003) Department of the Treasury FinCEN

OMB NO. 1506-0014
- To be filed with the Bureau of Customs and Border Protection
- For Paperwork Reduction Act Notice and Privacy Act Notice, see back of form.

31 U.S.C. 5316; 31 CFR 103.23 and 103.27

▶ Please type or print.

**PART I** FOR A PERSON DEPARTING OR ENTERING THE UNITED STATES, OR A PERSON SHIPPING, MAILING, OR RECEIVING CURRENCY OR MONETARY INSTRUMENTS. (IF ACTING FOR ANYONE ELSE, ALSO COMPLETE PART II BELOW.)

1. NAME (Last or family, first, and middle): Swan
2. IDENTIFICATION NO.: [redacted]
3. DATE OF BIRTH (Mo./Day/Yr.): 1962

4. PERMANENT ADDRESS IN UNITED STATES OR ABROAD: [redacted], NS B3Z 1A7
5. YOUR COUNTRY OR COUNTRIES OF CITIZENSHIP: CAN

6. ADDRESS WHILE IN THE UNITED STATES: IN TRANSIT TO NORFOLK
7. PASSPORT NO. & COUNTRY: CDN

8. U.S. VISA DATE (Mo./Day/Yr.):
9. PLACE UNITED STATES VISA WAS ISSUED:
10. IMMIGRATION ALIEN NO.:

11. IF CURRENCY OR MONETARY INSTRUMENT IS ACCOMPANIED BY A PERSON, COMPLETE 11a OR 11b

A. EXPORTED FROM THE UNITED STATES
- Departed From (U.S. Port/City in U.S.):
- Arrived At (Foreign City/Country):

B. IMPORTED INTO THE UNITED STATES
- Departed From (Foreign City/Country): HALIFAX NS
- Arrived At (City in U.S.): CALIS ~~Houlton~~ MAINE

12. IF CURRENCY OR MONETARY INSTRUMENT WAS MAILED OR OTHERWISE SHIPPED, COMPLETE 12a THROUGH 12f
12a. DATE SHIPPED:
12b. DATE RECEIVED:
12c. METHOD OF SHIPMENT:
12d. NAME OF CARRIER:

12e. SHIPPED TO (Name and Address):

12f. RECEIVED FROM (Name and Address):

**PART II** INFORMATION ABOUT PERSON(S) OR BUSINESS ON WHOSE BEHALF IMPORTATION OR EXPORTATION WAS CONDUCTED

13. NAME: - NIL -

14. PERMANENT ADDRESS IN UNITED STATES OR ABROAD:

15. TYPE OF BUSINESS ACTIVITY, OCCUPATION, OR PROFESSION:
15a. IS THE BUSINESS A BANK? ☐ Yes ☐ No

**PART III** CURRENCY AND MONETARY INSTRUMENT INFORMATION (SEE INSTRUCTIONS ON REVERSE) (To be completed by everyone)

16. TYPE AND AMOUNT OF CURRENCY/MONETARY INSTRUMENTS
- Currency and Coins ▶ $ 7,000 USD
- Other Monetary Instruments ▶ $
- (TOTAL) ▶ $

17. IF OTHER THAN U.S. CURRENCY IS INVOLVED, PLEASE COMPLETE BLOCKS A AND B.
A. Currency Name: USD
B. Country:

**PART IV** SIGNATURE OF PERSON COMPLETING THIS REPORT

Under penalties of perjury, I declare that I have examined this report, and to the best of my knowledge and belief it is true, correct and complete.

18. NAME AND TITLE (Print): Ian Swan
19. SIGNATURE: [signature]
20. DATE OF REPORT (Mo./Day/Yr.): 05 MAY 2025

**CUSTOMS AND BORDER PROTECTION USE ONLY**

| DATE | AIRLINE/FLIGHT/VESSEL | STATE/COUNTRY | LICENSE PLATE NUMBER |
|---|---|---|---|
| 3/5/25 | N/A | NS /CAN | [redacted] |

COUNT VERIFIED: Yes ☒ No ☐
VOLUNTARY REPORT: Yes ☐ No ☒
INSPECTOR (Name and Badge Number): Shufeldt 36897

FinCEN FORM 105 (Formerly Customs Form 4790)

T-N-

17. The FinCEN Form 105 included a General Instructions page. The instructions included the following statements and warnings, among others:

   a. **"WHO MUST FILE:** (1) Each person who physically transports, mails, or ships, or causes to be physically transported, mailed, or shipped currency or other monetary instruments in an aggregate amount exceeding $10,000 at one time from the United States to any place outside the United States or into the United States from any place outside the United States . . . ."

   b. **"WHEN AND WHERE TO FILE:** . . . **(C) Travelers**—Travelers carrying currency or other monetary instruments with them shall file FinCEN Form 105 at the time of entry into the United States or at the time of departure from the United States with the Customs officer in charge at any Customs port of entry or departure."

   c. **"PENALTIES: Civil and criminal penalties, including under certain circumstances a fine of not more than $500,000 and imprisonment of not more than ten years, are provided for failure to file a report, filing a report containing a material omission or misstatement, or filing a false or fraudulent report. In addition, the currency or monetary instruments may be subject to seizure and forfeiture. See 31 U.S.C. 5321 and 31 CFR 103.57; 31 U.S.C. 5322 and 31 CFR 103.59; 31 U.S.C. 5317 and 31 CFR 103.58, and U.S.C. 5332."**

18. The General Instructions page also included the following definitions,

among others:

> a. "**Monetary Instruments**—(1) Coin or currency of the United States or of any other country . . . ."
>
> b. "**Person**—An individual, a corporation, a partnership, a trust or estate, a joint stock company, an association, a syndicate, joint venture or other unincorporated organization or group, an Indian Tribe . . . and all entities cognizable as legal personalities."

19. After Swan completed the FinCEN Form 105, CBP Officer Brissette asked Swan to present his wallet. CBP Officer Brissette located an additional sum of $300 in Swan's wallet.

20. CBP Officer Brissette then searched Swan's vehicle, which contained a suitcase. Within a liner pocket in the suitcase, CBP Officer Brissette located an additional sum of $10,000 in U.S. Currency.

21. CBP Officer Brissette confronted Swan with the additional $10,000 located in his vehicle. Swan admitted, in summary, that he had attempted to conceal the money.

22. CBP seized the $300 from Swan's wallet, the $7,000 Swan initially provided from his vehicle, and the $10,000 located in the suitcase in Swan's vehicle. The U.S. Currency was determined to include 170 $100 bills, two $50 bills, and ten $20 bills. The U.S. Currency was taken into administrative custody on March 5, 2025.

23. CBP also conducted an electronic media search of Swan's cellular phone and observed a text-message string regarding the purchase of a boat. In one text, Swan provided his address in Canada and stated, "Would I [sic] be too much to ask to make

up a Bill of Sale for $5000 for the boat. Will reduce the taxes and duty owing at the border[.]"

24. Swan was permitted to withdraw his application for admission to the United States and to depart the Calais POE.

25. On about March 12, 2025, CBP sent Swan a Notice of Seizure.

26. On March 24, 2025, CBP received a Petition for Remission or Mitigation of Forfeitures and Penalties Incurred ("Petition") from Geoffrey G. Nathan, Esq., on behalf of Swan. The Petition addressed the "$17,300 undeclared currency" that was seized, averred that Swan was the owner of that property, and stated:

> I withdrew the money from bank account last week and left home in route to Norfolk, VA to look at a boat and decide to enter the United States. Unfortunately I did not declare the full amount of U.S. cash I was carrying. I did not realize the implication of underdeclaring the total amount. I thought it was only a formality of declaring cash. The full amount was to buy a used boat and to pay for my expenses. I sincerely apologies for not doing so. No harm was intended.

27. The Petition also included information regarding the boat that Swan intended to purchase and bank records depicting Swan's withdrawal of funds.

28. In a Petition Decision dated June 4, 2025, CBP denied Swan's Petition.

29. On June 25, 2025, CBP's Fines, Penalties, and Forfeiture Office received a U.S. Customs and Border Protection CAFRA Seized Asset Claim Form signed by Swan and dated June 10, 2025. Swan also submitted an Election of Proceedings—CAFRA Form dated June 10, 2025, with his claim, requesting that CBP refer the case to the United States Attorney's Office for judicial forfeiture proceedings.

30. On March 7, 2025, the $17,300 in U.S. Currency seized from Swan on March 5, 2025, was converted to a Machias Savings Bank Treasurer's Check (check

10

number 11768). The $17,300 was subsequently deposited into a CBP suspense account, where it has remained in the custody of the United States government to ensure that the forfeitable property could not be accessed or dissipated absent court order or, if forfeited to the United States, without prior consultation by the United States.

## *CLAIM FOR FORFEITURE*

31. The allegations contained in paragraphs 1 through 30 of this Verified Complaint are incorporated herein.

32. The defendant in rem is subject to civil forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(2). Specifically, 31 U.S.C. § 5317(c)(2) authorizes forfeiture of any property involved in a violation of 31 U.S.C. § 5316, and any property traceable to any such violation. The defendant in rem is property involved in a violation of 31 U.S.C. § 5316 and is property traceable to such violation and is thus subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2).

## *PRAYER FOR RELIEF*

WHEREFORE, the United States of America requests:

1. that a warrant and summons for arrest of the defendant in rem, in the form submitted with this Verified Complaint, issue to the United States Marshal for the District of Maine, or their designee, commanding them to (i) arrest the defendant in rem, and (ii) give notice to all interested parties to appear and show cause why forfeiture should not be decreed;

2. that judgement of forfeiture be decreed against the defendant in rem;

3. that thereafter, the defendant in rem be disposed of according to law; and

4. that this court grant the United States its costs and all other relief to which

the United States may be entitled.

Dated:  September 23, 2025                Respectfully submitted,

                                                            Craig M. Wolff
                                                            Acting United States Attorney

BY:     */s/ Nicholas Heimbach*
        Nicholas Heimbach
        Assistant United States Attorney
        United States Attorney's Office
        100 Middle Street
        East Tower, 6th Floor
        Portland, Maine 04101
        (207) 780-3257
        Nicholas.heimbach@usdoj.gov

## VERIFICATION

I, Jared Shufeldt, being duly sworn, depose and state that I am an Officer with United States Customs and Border Protection, United States Department of Homeland Security, and as such have responsibility for the within action, that I have read the foregoing Verified Complaint and know the contents thereof, and declare under penalty of perjury that the contents thereof are true to the best of my knowledge, information, and belief.

The sources of my information and grounds of my belief are official records and files of the United States and information obtained during an investigation and review of an alleged violation of Title 31, United States Code.

Date:  September 23, 2025          */s/ Jared Shufeldt*
                                   Jared Shufeldt
                                   Officer
                                   U.S. Customs and Border Protection
                                   U.S. Department of Homeland Security

STATE OF MAINE
Washington, ss.

Subscribed and sworn to before me this 23rd day of September, 2025.

                                   */s/ Stephen Balyint*

                                   Notary Public
                                   My commission expires: July 19, 2028

13